## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 08 2016, 10:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Paula M. Sauer | Gregory F. Zoeller |
| Danville, Indiana | Attorney General of Indiana |
| | Christina D. Pace |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Gamble, | September 8, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 32A01-1603-CR-628 |
| v. | Appeal from the Hendricks Superior Court |
| State of Indiana, | The Honorable Karen M. Love, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 32D03-1507-F6-525 |

**Vaidik, Chief Judge.**

# Case Summary

Charles Gamble was convicted of Level 6 felony impersonation of a law-enforcement officer. He appeals arguing that the evidence is insufficient to support his conviction. Because there is evidence that Gamble falsely represented that he was a police officer and then used that authority to gain entry to someone's home, we affirm his conviction.

# Facts and Procedural History

The evidence most favorable to the verdict shows that Gamble was friends with Ashley, a college student, but "romantically wanted more." Tr. p. 214. Ashley's sixteen-year-old brother was living with their abusive, alcoholic father. Ashley's older brother, Jeff, wanted to get custody of their younger brother.[1] Gamble told Ashley that he was an undercover detective with the Indianapolis Metropolitan Police Department and that he could "speed up the process" of Jeff getting custody of their younger brother but that he would be "putting [his] badge on the line." *Id.* at 217.

Ashley texted Jeff one day in June 2015 and said that she and Gamble were coming over to his house in Danville to discuss the custody issue. Jeff met them at his front door. Gamble, who had a gun and a badge, told Jeff that he

---

[1] Ashley and her younger brother had the same father, but Jeff had a different father. Although Jeff referred to him as his stepfather, we use "father" throughout for ease of reference.

was an IMPD detective. *Id.* at 210. Jeff allowed Gamble to come inside his home "because of his position" as a police officer. *Id.* at 195; *see also id.* at 193 ("[B]ecause I believed he was a public servant I allowed him into my home."). Gamble said he was "overstepping his boundaries" by helping with the custody issue because he was "involved with [Jeff's] sister." *Id.* at 143.

[4] While at Jeff's house, Gamble talked on the phone for nearly four hours with what appeared to be other law-enforcement agencies, including a SWAT team, about the custody issue. During this time, Gamble instructed Ashley to pick up her younger brother from their father's house because he needed to be removed from the "unsafe" environment; Ashley did so and brought him to Jeff's house. *Id.* at 163. Gamble then left Jeff's house, claiming he was going to participate in the arrest of their father. However, Jeff watched out the back of his house as Gamble pulled over a woman in a minivan, using his personal car with self-installed flashing lights. Gamble returned five minutes later, claiming that he had just arrested their father for operating while intoxicated. Later that night, Gamble said he was still "building [his] case" against their father and asked Ashley, Jeff, and their younger brother to write statements about the custody issue; they wrote statements and gave them to Gamble. *Id.* at 172, 178.

[5] The next day, Gamble returned to Jeff's house. By this time, Jeff, a former military police officer, had figured out that Gamble was not a police officer. Gamble told Jeff that he had a warrant for their father's arrest and that he wanted Jeff to go with him. Jeff, however, did not want to go, so he gave Gamble his bullet-proof vest because it was "the only way [he] could de-

escalate him to get him out of [his] house." *Id.* at 206. Gamble later left Jeff a voicemail telling him not to talk to anyone about the situation. Jeff called the police.

[6] The State charged Gamble with Level 6 felony impersonation of a law-enforcement officer. Following a jury trial, Gamble was convicted as charged. The trial court sentenced him to 900 days.

[7] Gamble now appeals.

# Discussion and Decision

[8] Gamble contends that the evidence is insufficient to support his conviction for Level 6 felony impersonation of a law-enforcement officer. In reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* at 146-47. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[9] At the time of the offense in this case, Indiana Code section 35-44.1-2-6 provided:

> A person who falsely represents that the person is a public servant, with intent to mislead and induce another person to submit to false official authority or otherwise to act to the other person's detriment in reliance on the false representation, commits impersonation of a public servant, a Class A misdemeanor. However, a person who falsely represents that the person is:
>
> > (1) a law enforcement officer;
>
> > * * * * *
>
> commits a Level 6 felony.

Ind. Code Ann. § 35-44.1-2-6 (West Supp. 2015).[2] Here, the State alleged that Gamble falsely represented that he was a law-enforcement officer "with the

---

[2] Effective July 1, 2016, the statute now provides:

> (a) A person who, with intent to:
>
> > (1) deceive; or
>
> > (2) induce compliance with the person's instructions, orders, or requests;
>
> falsely represents that the person is a public servant, commits impersonation of a public servant, a Class A misdemeanor, except as provided in subsection (b).

intent to mislead and induce [Jeff] to submit to false official authority or act to [his] detriment in reliance on the false representation." Appellant's App. p. 13.

[10] Gamble does not dispute that he falsely represented that he was a law-enforcement officer; rather, he argues that the evidence does not prove the additional requirement that he intended Jeff to (1) submit to his false official authority or (2) act to his detriment in reliance on the false representation. The State responds that the first requirement is satisfied because the evidence shows that Jeff "only allowed [Gamble] to enter his home because [Gamble] represented that he was a police officer." Appellee's Br. p. 9. We agree. The record shows that Ashley texted her brother that she and Gamble were coming over to discuss the custody issue. Jeff met them at his front door. Gamble, who had a gun and a badge, told Jeff that he was an IMPD detective. Jeff then allowed Gamble to come inside his home "because of his position" as a police officer. Tr. p. 195. Otherwise, Jeff would not have let Gamble inside his home. *See id.* at 210, 211 (Jeff explaining that he did not "put [Gamble] off [his] property from the get go" because he "thought" Gamble was a police officer

---

(b) The offense described in subsection (a) is a Level 6 felony if the person falsely represents that the person is:

   (1) a law enforcement officer;

* * * * *

P.L. 31-2016, § 1.

and did not want to "challenge his authority in any way").  Although Gamble claims that Jeff let him inside his home because he was Jeff's sister's "companion," Appellant's Br. p. 8, this is a request to reweigh the evidence. Accordingly, we affirm Gamble's conviction for Level 6 felony impersonation of a law-enforcement officer.

Affirmed.

Baker, J., and Najam, J., concur.